And I believe we're going to hear first from Mr. Lichte. It's Lichte. Lichte. Okay. Very good, Mr. Lichte. Good morning. May it please the Court. Bruce Lichte appearing on behalf of the appellants. This is a case in which it might be easy to lose the forest for the trees.         I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I don't know. Just joking. I want to start off by saying while the briefs are about highly technical issues to some extent and how rules should be construed, statutes interpreted and precedents distinguished, and I will talk about some of that. At day's end, what this case is really about from the perspective of the appellants is the ability of a private energy company to private energy operators by means of financial incentives to the government and partnering with the government to essentially do an end run around a state regulatory determination that there is no public need for the project, the very project that they want to do. My clients believe that by challenging the condemnation of the property that's necessary for that essentially private purpose, that they are giving this court an opportunity to draw lines about the propriety of that kind of endeavor. Mr. Lichte, hasn't this issue really already been resolved? Part two of the Federal Power Act that I'm reading here delegates to the Federal Energy Commission exclusive authority to regulate the transmission and sale and wholesale of electric energy and interstate commerce. That's the Transmission Agency of Northern California versus Sierra Power. And the Supreme Court said in Jones versus Rath packing, I'm paraphrasing here, preemption of state law is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. So if Congress has given the exclusive authority in this case, how can the state regulatory scheme have any role in this? First of all, Your Honor, I'm not familiar with the citations you're alluding to there. I'm not sure the government has cited to them. Are those recent? Are those older? The Jones case is 1977, and the Transmission Agency case is 9th Circuit, 2002. But I would in this case point out that the authority cited by the government in its If Congress has, in fact, conditioned authorization for this particular type of taking on a certain set of circumstances, then there would be a need to determine whether in a particular set of circumstances those conditions, those factual predicates have been made. Well, language of exclusive authority comes from the Act itself. I mean, that's been there for some time. The cases construe that. But exclusive authority is pretty clear, isn't it, in this instance? Well, I'd have to look at the exact language of the Federal Power Act. And again, I don't believe that was one of the authorities cited for this particular taking. Does it make any sense if Congress wants to give its respective agencies the ability to run electric power lines? In this case, you're going from the northwest all the way down through California and even farther. You've got all these different state regimens or regimes, rather. Does it make any sense at all that Congress would have, by this language, impliedly given each state the ability to stop the project in its tracks if each state made an independent determination that it didn't like what was going on? Well, again, Your Honor, I guess I wouldn't concede, first of all, that that Power Act is relevant to this particular taking. But in the abstract, I think it is quite conceivable, and I think even in my briefs, I've cited instances where, for instance, I think it was the atomic, the case involving atomic power, atomic transmission lines from atomic energy, that Congress specifically said that they wanted this to be subject to local institutions. Well, that's different. When it talks about water and atomic energy, Congress has specifically authorized states to be involved. And then we have something here in California regarding the Coastal Act and oil exploration and so on. But that's where Congress expressly authorizes the state to be involved. But when there is no such authorization and the statute talks about exclusive authority, I don't, I'd be interested in any case law you can cite to me that shows that the state should have the ability to interfere, if you will, in this federal mandate that Congress has given. Well, again, going back to the problem that I don't believe this particular statutory scheme was cited. But let's say, for instance, that the Energy Secretary had been given exclusive authority. One would still need to examine whether that is exclusive authority untrammeled, whether that's exclusive authority to act under certain other statutory sections which set up certain factual predicates and conditions. And I don't believe, in the abstract, that, I mean, and that's why I think these other statutes are relevant, even if they expressly say we want the government to respect state and local authority. In the abstract, it's not inconceivable that Congress wants that to happen, I mean, that representatives bargain for that to happen. And I would respectfully differ with the idea that it has to be expressed explicitly in a congressional enactment in order for that respect for state and local authority to take place. I think the opposite is true. There has to be an express preemption. There has to be expressed preemption language in a statute. That's flying in the face of this Jones v. Rath-Packing case I cited to you, which is a Supreme Court case. Again, they say preemption of state law is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. That's pretty clear, is it not? Well, Your Honor, again, I'm at a disadvantage. That was not cited by the government. I don't believe I cited it. I would certainly be happy to do a supplemental brief on that particular case, but not being familiar with that case. Well, we'd be happy to have a 28-J letter on that if you want. If you want, you can move on to the other issues, but I wanted to get your understanding of this preemption issue. Again, you know, whether or not I accept that that case is relevant, I guess I would have to read the case and provide you a 28-J letter. We welcome you doing so. Thank you. All right. What I want to do, did want to focus on some more, though, was this idea which I believe there is a confusion in the term necessity and necessary, which perhaps I think some of the courts have alluded to this, although not quite in the same terms that I'm going to, but I don't believe it's been made explicit enough in some of the decisions. And that is that there is a distinction between a congressional enactment and an executive authorization, so that if the congressional enactment, the congressional legislation itself sets up that, yes, there is authority for this kind of a taking if it is necessary, or, for instance, if there's other ---- But, counsel, the authority that gives that discretion, that gives the discretion to act as deemed necessary, so the actions that are being partaken to that are deemed to be necessary actions. I think Your Honor has used an important word there that I want to key on. If the language of the congressional legislation says if it's deemed necessary, then I don't have a quarrel that the executive can say, yes, this is necessary and there's no justiciability. However, if the language of the legislation is that it is ---- it is, it has to be necessary, not that it's deemed necessary or that the executive believes it's necessary, there is a big distinction there, and that is justiciable, and I think Congress intended it to be justiciable. Where does it say that it has to be necessary in the statute here? Well, I think there's a number of provisions in the Reclamation Act, the Flood Control Act, the Central Valley Project, where maybe the word necessary is not used in all those, but I believe it is used in some, but essentially what I'm saying is that if those acts set up certain conditions, certain factual predicates for authorization for a taking, then it is justiciable, and those acts don't say, well, if the executive believes that it's necessary or believes that these conditions are met, they don't say that. They say these conditions have to be met. Well, let's get specifically to this. The Energy and Water Development Appropriations Act of 1985 authorizes construction as the Secretary, in quotes, deems necessary. I think you said just a minute ago that if that's what the statute says, that you don't have a justiciable issue on this particular portion of your case. Is that correct? And which one are you citing again? The Energy and Water Development Appropriations Act of 1985, it's 16 U.S.C., section 837G1. And I know there was at least one of these acts which says that, yes, if it was deemed necessary, but you have to look then at what that particular act is talking about, and because this is such a thicket of different authorizations, that's an appropriation act, and there are other arguments in that particular case as to why that does not authorize an appropriation for this particular taking. So yes, I agree with Your Honor as far as it goes, that if that language is used in all of the authorizing statutes that are necessary, then it's not justiciable. But if that's used in only one of them, which I think it may be, one or two of them, and if there's other problems with that particular authorization, as there are with that appropriation act. What's your take? Let's take this for a moment. If one of these acts does not contain that expressed language, the Seventh Circuit has referred to the concept of implied necessity in the case of City of Davenport versus three-fifths of an acre of land at 252 Ft. 2nd, 354. What's your take on that? Is there a concept that we should be adopting here of implied necessity if you have a series of acts that provides for this Route 15 and one doesn't have that expressed language? Can we imply necessity in the other act? Your Honor, I submit that that's a slippery slope and that the Federal judiciary should resist it, notwithstanding what the Seventh Circuit has done. I don't think you should be having implied necessity when there are takings issues involved. However, even if this Court would believe otherwise, I think one has to be very careful about implying necessity, and I don't think the conditions are met here. Well, you've got a high burden because of the nature of the bees. The Court's going to look at public use. Is this going to be a public use? I don't think there's much trouble with most people saying providing power to the section of the nation is a public use. If we have to look and say, well, now, was it really necessary to run this line down this? Wouldn't it have been better to go over the hill and run it here? We're not equipped to do that. There are agencies that do that kind of thing for the Federal government, and that's why necessity, in that sense, is just almost never a part of judicial review of condemnation actions. You decide whether it's a public use, and you have a trial about compensation. Well, I would respectfully disagree because I think some of the cases here do say that there was proper authority in the legislation for what was done. Oh, yeah, you can look, and I can assure you, if somebody just walks off the street and says, I'm condemning your property, we want to know, do you come from the government, and is there some statute that gives you power to condemn? There's a lot of power grids that have been built with lots of statutes authorizing it. And I guess I would take issue also with Your Honor's assertion that in this day and age of energy deregulation, that it can always be assumed that power transmission and generation are going to be a public necessity, or that it's primarily designed to meet a public need. And I think that's precisely where we ran into, I mean, that's what the declaration of labor law is. Can you cite any case that provides that where the government will, at the end of the day, own, in this case, 10 percent of the unit, the power, et cetera, that that, because they are private partners, that that does not constitute a public use? No, I think this is a groundbreaking case. I mean, I'm not aware. You're asking us to make new law. In that respect, although I don't think you have to make new law if the Court is reluctant to do that, because I think there are plenty of other reasons here to reverse and remand and put the defendants back in the same procedural posture that they were in. What's your take on the Supreme Court case Hawaii Housing Authority v. Mitkiff? It's a 1984 case, which, at least by my reading, indicates that the courts are not supposed to substitute their judgments for that of the legislature as to what should be condemned. And the fact that taking by eminent domain is transferred to a private party doesn't mean it only has a private use. Do you agree with that reading in that case? Absolutely. But I don't believe that that case is dispositive here, and that is because I'm not asking a court to substitute its judgment for the legislature. But you are arguing, are you not, that because private parties were involved and will ultimately get about 90 percent of the value of this, that therefore it's not a public use? I'm arguing that a public-private partnership, which I do not believe has been tested in any previous case, is a different beast from, you know, some of these other U.S. Supreme Court cases, whether it be the mid- But it happens all the time. I would respectfully assert that it hasn't happened until recently, and the courts have not really had a good opportunity to rule on that. I do want to reserve some of my time to- You want to reserve your time now, and we'll hear from the government, and then you come back and- Okay. Very good. We'll end here from Mr. Wright, from the Department of Justice, I assume. Yes, Your Honor. Not only does the statute at 16 U.S.C. Section 837G-1 authorize the Secretary of Energy to construct such facilities as he deems necessary to transmit power between the Pacific Northwest and California, but to participate in the construction of such facilities. So the private partnership was contemplated by Congress in the authorization itself. This is an unusual condemnation case in one respect, because not only do we have the Secretary of Energy's determination that this line should be built, but we have Congress's concurrence in that conclusion. In the Supplemental Appropriations Act of 1985, Congress funded the California-Oregon transmission project and required the Secretary to adhere to a memorandum of understanding for the project, which included plans to upgrade Path 15. When that job hadn't been done by 2001, and we had seen the blackouts here in California, the House Appropriations Committee, in considering the Supplemental Appropriations Act of 2001, made a finding that the Path 15 was a bottleneck in the transmission of electricity, and the Conference Committee reported that they were going to provide special funding, quote, for the Path 15 transmission line, close quote. It is therefore ineluctably clear that Congress itself felt that this project should go forward. The question now on appeal, which is for this Court to decide, is whether the Secretary of Energy had authority to condemn an easement for a power line to transmit power between the Pacific Northwest and California. And the statutes make that decision abundantly clear. The contention that a state law could somehow bar an otherwise authorized federal taking basically, on its face, alleges a direct conflict between state law and federal law, and under the Supremacy Clause, the allegation itself has to fail as a matter of law. Either the state law blocks the taking or it doesn't. If it doesn't, it's not a defense to the taking in the first place. So all of this factual information about what the state law would require or what Ms. Lynch would testify to at trial is really immaterial. It doesn't advance the decision on whether the taking is authorized, and since it doesn't advance the ball, it's really kind of irrelevant and immaterial. Do you know of any exceptions to that rule, except when the Congress has expressly authorized state law to be involved, like in the case of atomic energy or water? Yes, Your Honor. In fact, interestingly enough, in reviewing the appellant's reply brief, they cited to California v. United States for the proposition that Section 8 of the Reclamation Act required compliance with all state laws. When I pulled that case up to notice that this Court had discussed that exact contention in a case entitled, if I can find it here, that's the wrong one, Columbia Basin Land Protection Association v. Schlesinger at 643 Fed 2nd, 585, on pages 605 to 606. That case involved a situation where the Federal Government had acquired rights-of-way across Federal land under the Federal Land Management and Policy Act, probably got those backwards, FLPMA, and those rights-of-way were required by FLPMA to contain a clause that said the right-of-way holder will comply with state standards. The State of Washington contended in that case that the requirement to comply with state standards was a requirement to get a state certificate through the state certification process. This Court made a distinction between Section 8 of the Reclamation Act, which leaves no doubt that the Federal Government has to comply with state laws when acquiring water rights, and looked at FLPMA, which only required a compliance with state standards. And they said this refers to substantive standards. It does not refer to the procedure. The Court held that to require the Vaunaville Power Administration to receive a state certificate would imply that the State could deny the application, which would give them a veto power over the Federal project. This clearly cannot be the meaning that Congress intended. Much stronger language would be needed for us to conclude that Congress was delegating so much power from the Federal Government to the States. Congress would not delegate such an important function as the decision of whether and where to distribute electric power from Federal facilities to total State control in such a brief statement. So that's really saying not only does the, if you will, authorization for State law to be involved has to be expressed, it has to be really clear. Otherwise, Federal law preempts any State law involvement. Yes, Your Honor. And I might point out that the case of Maughan v. United States, which is cited in both briefs, really wasn't a condemnation case by the time it reached this Court. It was a land use case. Nobody was contending that the Federal Government could not own the easements. They were simply fighting over how could those easements be used. And that distinction is kind of important here because whatever beef the State of California has about how the easements are to be used, they can carry those out through the Federal Energy Regulatory Commission and have it reviewed by the D.C. Circuit and all that sort of thing. The rule really in this case is that a Federal taking for purposes authorized by Congress cannot be blocked by State law absent a clear and unambiguous Congressional statement to that effect, meaning to the ownership by the Federal Government. The District Court decided these questions as a matter of law, and having done so, was of 2005, a pretrial stipulation stipulating to the value of the property. In that pretrial statement, the United States noted a couple of times, this resolves the entire case because the law of the case is that the proper authority was exercised in the taking, and the only remaining issue is determination of just compensation. Those two issues having been decided, there to resolve. One of the cases cited by the appellants in their reply brief was Portsmouth Square Inc. v. Shareholder Protective Committee. It's an interesting case because there the District Court pronounced summary judgment right after the pretrial conference. And this statement discloses that no material facts are in dispute, and that the undisputed facts entitle one of the parties to judgment as a matter of law. A summary disposition of the case is appropriate. The Court need not await a formal motion or proceed to trial under these circumstances. The real question here is whether they had any notice. And I gather the Government's  request by the Court for additional information regarding authority to condemn, et cetera, that they indeed had notice on the remaining issue. Well, given that the law of the case was that there was authority and the stipulation as to just compensation, the Court invited, is there anything else? Right. And they were not able to establish that there was anything else, and in fact basically reiterated the same issues that they'd already litigated as being what they wanted to go to trial on. So and again, in another case cited in the reply brief, in Ray Rothery, this Court had held a court may grant summary judgment without notice if the losing party has had a full and fair opportunity to ventilate the issues involved in the motion. Here, that full and fair opportunity had come in the Court's consideration of the answer which objected to the taking and the Government's motion. I might just clarify on that point that by filing an answer objecting to the taking, the landowner put the burden on the Government to show that the taking was authorized, that the property was properly before the Court, and that the Court had authority to proceed to fix just compensation. The United States filed a motion. They titled it a motion to strike or for judgment on the landowner to establish that we have the authority, we recognize it's our burden, and we think we can establish it based on the statutes cited in the pleadings themselves. And that's how the Court proceeded. Very good. If you have no further comments, then we thank you very much for your presentation and Mr. Lichty, do you want to use the balance of your time? First of all, the idea that there was nothing left to be tried is just flatly incorrect. There was a denial presented by the answer here in addition to the affirmative defenses. That denial had never been adjudicated. Now, if one would take the position that the exact issues that are going to be litigated in the context of that denial are the issues that were already litigated by the affirmative defenses, that might be a different matter. But the judge never said that here. Why didn't you tell the Court to remain for a decision? Well, first of all, it was not clear the judge had ever considered our facts at all, because in his judgment on the pleadings, he was saying, you know, the plaintiff is, the United States is due judgment on the pleadings. So we said, hey, we've got a declaration of Loretta Lynch here, former California Public Utilities Commissioner. I've got my declaration, which presented some information about the memorandum of understanding and WAPA, the Western Area Power Administration. And we've got all the issues of whether or not there really was authority. That had been ruled on, hadn't it? Correct. But it hadn't been, I mean, it had not been ruled on properly. In other words, this action You just disagreed with the district court's ruling. That's the difference between whether it had been ruled on and not. There's two different issues. One is, yes, we disagree with the district court's ruling. But even if the district court's ruling on the judgment of the pleadings was correct, summary judgment would be improper here, because you've got to give the defendants the opportunity to come in with all their facts, which was never done here. Well, let's take the issue of the PUC, former PUC official. If the Court ruled the federal law preempts the state law, what relevance would that have? Well, first of all, I don't believe there was that ruling. I mean, this whole concept of implied preemption troubles me. I'm not even talking implied. Just if the Court, I think, very clearly determined that state law does not control this. Do you disagree with that? I certainly disagree with the ruling. I understand that. But I mean, do you disagree that the judge ruled on that? I'd have to go back and look to see if that was a part of his ruling or not. Counsel, but I'm really having trouble understanding what would be left to try, given the rulings. I understand you respectfully disagree with those rulings. But putting that aside, I can't think what the district judge would have tried at that point. But the district judge didn't give us due process to even ask that question there. And that's where the question needs to be asked, not here. We're entitled to come in with all of our facts. I'm asking it now. What would you have tried? We would have tried some of the factual predicates, for instance. What factual? Try to be specific if you can. Again, we'd have to go back to five different statutory schemes and appropriations schemes on which they said they have this authority. I've gone through those extensively in my brief and pointed out that there were issues of fact as to whether the conditions of those appropriations acts and those authorizing acts were met. That was part of it. Those were some of the facts that would have had to be introduced at trial. And I was prepared to do that by calling in adverse witnesses, because I believe that WAPA, Department of Energy, would themselves have had to admit that not all those conditions, those factual predicates would have been met. That's the whole key to this case. I hope that the panel understands that, because the four corners of the statute is not such a simple determination as the government would make it when there are these factual predicates that have to be established for authorization. So your view is that rather than a determination of law, which is the province of the trial judge, that this was essentially a fact inquiry and that the judge couldn't possibly have made the legal construction that he did without getting the facts. Is that your position? Yeah. He was not in a position to say all those affirmative defenses were wrong, let alone to say that the denial had... Does he even have to get to those? Is it even relevant if the judge looks at the statute and says, well, here's the statute, and it's very clear to me that as a matter of law, the secretary has the authority to do this. Why would those other things even be relevant? If, in fact, he makes that determination, it might not be relevant. But if he made that determination here, it was an incorrect determination because he did not do the analysis of what kinds of steps were necessary for the executive to satisfy in order to meet the legislative terms on authorization. The terms were not or simply not met here, or, I mean, I think the judge could have told from the four corners of the statute that the terms were not met, but at the very least, the defendants should have had the right to come in and prove at trial that those terms for the authorization were not met. Well, thank you very much, Mr. Lictor. We thank both of you for your presentations. The case of United States v. Sawyer is submitted, and this Court will stand adjourned. Subject to that 28-J letter, Your Honor. Consent is a 28-J letter, but remember, it's a 28-J letter, not a supplemental brief, okay? All rise. This Court, for this session, now stands adjourned.
judges: Canby, Smith, Larson